## Franzman's Executors v. Nalty, et al.

(Decided March 27, 1925.)

Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Wills—Verdict of Jury as to Testatrix's Mental Capacity Must be Sustained by Evidence of Probative Nature.—While it is for jury to determine from evidence whether testatrix had sufficient mental capacity to dispose of her property by will. verdict must be based upon and sustained by evidence of a probative nature.

2. Evidence—Nonexpert Witnesses' Testimony as to Mental Capacity Not Entitled to Probative Effect Beyond Facts to which They Depose.—The testimony of nonexpert witnesses as to testatrix's mental capacity is not entitled to probative effect beyond that justified by facts to which they depose concerning acts, conduct, and conversation of testatrix.

3. Evidence—Expert Opinion as to Mental Capacity, even though Not Inducing Belief Expressed Thereby, is for Jury.—The professional opinion of physicians and alienists concerning mental condition of testatrix, even though based on facts which may not in the opinion of laymen or even court induce belief and opinion expressed by expert presents question for jury.

4. Wills—Evidence Held to Make Question of Mental Capacity One for Jury.—In will contest for mental incapacity, evidence held to make question of testatrix's mental capacity one for jury.

5. Wills—Belief in Spiritualism Not Evidence of Mental Incapacity. —That testatrix believed in spiritualism is not evidence of her mental incapacity.

6. Wills—Jury's Finding of Mental Incapacity of Testatrix Held Flagrantly Against the Evidence.—In will contest, though evidence of mental incapacity warranted submission to jury, verdict for contestants held flagrantly against the weight of evidence.

BURWELL K. MARSHALL, GEORGE L. OEVERBACH and OTTO G. OEVERBACH for appellant.

WOODWARD & WARFIELD for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The last will and testament of Louisa R. Franzman was executed in March, 1907, and was probated in the Jefferson circuit court in September, 1922. It was contested in the Jefferson circuit court by appellees on the ground that the testatrix, in making the will, was unduly influenced and without mental capacity. No evidence of undue influence was produced at the trial and this ground was abandoned. A large volume of evidence was taken pro and con. on the question of mental capacity and afterwards submitted to a jury by an instruction of which no complaint is made, and the jury found and returned a verdict that the paper offered in evidence was not the will of Louisa R. Franzman. Judgment being entered in accordance with the verdict, this appeal is prosecuted by the executor, Louisville Trust Company.

Appellant insists that the court should have sustained its motion made at the conclusion of the evidence for the contestants, to find and return a verdict for it; or at least should have so instructed the jury at the conclusion of all the evidence, there being, as it contends, no evidence, not a scintilla, calculated to induce conviction or support a verdict that the paper was not the will. It also insists that the verdict is flagrantly against the evi-

dence. Some twelve or more witnesses testified for the contestants, in substance, that the testatrix was an old, decrepit lady at the time of the making of the will in 1907, and was obscessed with the idea that she could communicate with departed spirits and thus obtain guidance for her daily conduct; she was a spiritualist and believed in seances, undertaking for pay to tell fortunes and give advice; that she had an uncompromising antipathy for the Roman Catholic church and belonged to the "A. P. A.'s." Her conversation was chiefly concerning spiritualism and those with whom she communicated in the spirit world. She often sought the advice of "Big Chief," a spirit of an Indian chieftian; and also of "Prairie Flower," another spirit. She sometimes reported, according to the witnesses, that she had communicated with the spirit of her departed mother, and had received advice. The witnesses also stated she was very nervous and could not endure the noise of children playing about her house or on the street in front of her house, and on one or more occasions she attempted to drive them away. She had a number of tenants, some of them in the house in which she dwelt, and others in other buildings, with whom she could not agree; that she was very anxious to collect her rents and would appear at the tenant's door on the day the rents were due to receive payment; that she was very anxious to receive money and carefully hoarded it. That she kept a dark room in her house in which she received her patrons who desired their fortunes told; that she stated the room must be dark in order that the spirits would not be frightened away. The family physician testified he had known her for many years and had treated her at different times and that he did not believe she was of sound mind in 1907 at the time of the making of the will, and did not believe she had sufficient mental capacity to know the objects of her bounty and her duty to them, although he admitted she knew her property and its value.

Was this evidence sufficient to carry the case to the jury and to support the verdict? There was much evidence for the contestees to prove that Mrs. Franzman was a good business woman, careful and prudent, and was entirely rational at the time of the making of the will in 1907. While it was a question of fact peculiarly within the province of the jury to determine from the evidence whether the testatrix had mental capacity sufficient to dispose of her property by will at the time she

attempted to do so, in 1907, the verdict must be based upon and sustained by the evidence of a probative nature.

Although the testimony of nonexpert witnesses will not be entitled to probative effect beyond that justified by the facts to which they depose concerning the acts, conduct and conversation of the testatrix, a different rule obtains with respect to the testimony of physicians and alienists who are classed as experts.

The professional opinion of physicians and alienists concerning the mental condition of . a testatrix, even though based upon facts and circumstances which may not in the opinion of a layman, even of a court, induce the belief and opinion expressed by the expert, the question is one for the jury.

In the recent case of Humphrey v. Neal, et al., 199 Ky. 498, where this subject was under consideration, the court said:

"This testimony is not subject to the criticism that has been made of testimony of this character coming from nonexpert witnesses, and in this respect the case is different from Wiggington's Executor v. Wiggington, 194 Ky. 385. It is true that in that case and the later decisions cited in that opinion it is stated that in determining what constitutes some evidence for the jury—a question that must be determined by the court—the quantity and character of the evidence must be such as to induce conviction, and that isolated acts or circumstances not reasonably inducive of the opinion expressed by the witness are not sufficient. This rule is particularly applicable to the testimony of nonexperts. But where a witness is an expert, and is qualified to express an opinion and does express one that is unequivocal, even though some of the facts and circumstances upon which it is based may not, in the opinion of the court, induce the belief entertained by the witness, the question is for the jury, unless the testimony of the witness as a whole sustains the view that his opinion is erroneous or is based on incidents or facts not incompatible with a rational mind."

See also Bush v. Lisle, 89 Ky. 393; Cecil's Exors. v. Anhier, 176 Ky. 198; Langford's Executor v. Miles, 189 Ky. 515.

While we have experienced some difficulty in determining whether the evidence offered by the contestants

was sufficient to warrant the court in submitting the case to the jury, we have reached the conclusion that when all the facts and circumstances proven in evidence are taken and considered together, the question was one properly for the jury. There was, perhaps, something more than a scintilla of evidence tending to show that the testatrix was without mental capacity to make the will at the time she attempted to do so in 1907. This, however, is not and could not be based upon the fact that she believed in spiritualism, for we have expressly held that such belief is not evidence of mental incapacity, saying:

> "The fact that one believes in spiritualism is not an evidence of unsound mind. Many brilliant and well balanced minds are fixed in the belief that they can communicate with the spirits of those whose physical life has ended. The belief is a conviction commonly produced by evidence of some sort —not evidence, perhaps, that might appeal to the ordinary run of minds as satisfactory or as sufficient to establish a belief. A belief founded upon evidence, however unsatisfactory that evidence may be to some other mind, which measures it to test its sufficiency, is not an insane delusion." Raison v. Raison, 148 Ky. 116; Owen v. Crumbaugh, 228 Ill. 380.

While there was some slight evidence tending to support the charge of contestants that the testatrix was without mental capacity to make a will, this evidence was not of such nature and consequence as to support a verdict against the will. We are of opinion that the verdict is flagrantly against the weight of the evidence. We think the great weight of the evidence supports the contention of appellant that the testatrix was mentally capable of disposing of her property by will.

Judgment reversed for proceedings in accordance herewith.