# Davis' Ex'r et al. v. Laughlin et al.

Nov. 10, 1939.

John P. Haswell for appellants.

Crawford, Middleton, Milner & Seelbach for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

This appeal is prosecuted from a judgment of the Jefferson Circuit Court adjudging that a paper executed by Mrs. Nannie Myrtle Davis was not her will, and certifying that fact to the Jefferson County Court and ordering it to set aside the judgment entered there probating this paper as Mrs. Davis' will. The appellants, the contestees below, seek a reversal of the judgment of the circuit court on the following grounds: (1) The proceeding in the circuit court was not an appeal from the county court and the demurrer to the petition should have been sustained; (2) the case was heard by a jury when no motion was made for a jury trial; (3) irrelevant and prejudicial evidence was admitted; (4) a peremptory instruction should have been given; (5) the verdict is flagrantly against the evidence; (6) the Court erred in refusing to permit the devisee's husband to testify in her behalf; (7) the court arbitrarily restricted appellants in the number of witnesses it allowed them to introduce.

The grounds for contest alleged in the petition are undue influence and mental incapacity, and the prayer asks that the writing be declared not to be the last will and testament of Mrs. Davis. There are filed with the petition as exhibits certified copies of the will and of the judgment of the Jefferson County Court admitting it to probate. Sections 4850 and 4851, Kentucky Statutes, provide an appeal may be taken to the circuit court from a judgment of the county court probating or refusing to probate a will; and Section 978, Kentucky Statutes, and Section 724 of the Civil Code of Practice, provide that an appeal is taken from the county court to the circuit court by filing a certified copy of the judgment of the county court in the circuit court and having process issue against appellee. As certified copies of the will and of the judgment of the Jefferson County court probating it were filed as exhibits with the petition in the Jefferson Circuit Court, we hold that this proceeding

was an appeal from the county court to the circuit court and that the circuit court properly overruled appellant's demurrer to the petition. Lisle et al. v. Couchman, 146 Ky. 345, 142 S. W. 1023; Central Trust Company of Owensboro v. Bennett, 208 Ky. 281, 270 S. W. 821.

It is provided in Kentucky Statutes, Section 4850, that the circuit court shall try both the law and the facts in will cases unless a jury be required, and Section 4859 provides either party may demand a jury in such trial. Here, neither party demanded a jury and appellants without objection, let the court impanel a jury which they accepted and now they cannot be heard to complain that their case should have been tried by a court without a jury. Patton v. Catlettsburg National Bank, 200 Ky. 775, 255 S. W. 690; Williams v. Denny, 238 Ky. 662, 38 S. W. (2d) 668; Kavinedus v. Maglia, 264 Ky. 276, 94 S. W. (2d) 675.

Before discussing the evidence we will give a brief background of this case. The testatrix, Mrs. Davis, was a widow 69 years of age, who lived in Louisville, Kentucky. Her estate, worth in the aggregate about $3,000, consisted of two pieces of real estate, a house and lot on Sixth Street in Louisville and a small plot of ground with a cabin thereon located near Lyndon in Jefferson County. She and her husband had no children and she obtained this property at his death in 1930 through his will. She appears to have been very devoted to her husband, but she had no great affection for her own relatives consisting of the appellants, a brother and two sisters, who resided in West Virginia. Besides her brother and sisters, she had some nieces and nephews but she saw none of her own relatives except on infrequent occasions. In April, 1937, she executed a will devising all of her estate to a favorite niece of her husband, Mrs. Hattie Davis Morris. Soon thereafter, Mrs. Morris died and Mrs. Davis sent for her friend and lawyer, Judge J. J. Kavanaugh, who had written her first will, and explained to him that Mrs. Morris had died and that she wanted to execute a will devising all of her property to Mrs. Bessie Knott, who had moved into her home in March, 1937, and was taking care of her and treating her with kindness and affection. Judge Kavanaugh prepared the will as directed and it was executed by the testatrix on July 2, 1937, with the Judge and Mr. Charles Hesterman signing as witnesses. Mrs. Davis lived until the following September 16th, when

she died as a result of a complication of diseases consisting of diabetes, a valvular heart condition accompanied by high blood pressure, an intestinal disorder and uremia. Previously, she had a cancer of the breast and had been in bad health for some years.

The testimony of some of her friends, acquaintances and persons rooming in her house, was that she was reared a Methodist but joined the Presbyterian Church with her husband and that she had a great antipathy towards Catholicism. As evidence that she was of unsound mind, appellees introduced testimony describing her antipathy toward Catholics from both a religious and political standpoint, and yet, she embraced the Catholic religion in the summer of 1937, was attended by a priest on her death-bed and was buried from a Catholic Church. Testimony was introduced that she had hallucinations that her deceased husband was in her room; that she saw him there and conversed with him in the presence of visitors. Appellants contend that such testimony concerning her religious beliefs and her faith in spiritualism was both incompetent and highly prejudicial. We have written that belief in spiritualism does not show a lack of testamentary capacity and that one's religious belief may not be shown on such a subject. But in those cases it was said that insane delusions based upon spiritualism and religion may be shown to establish a lack of mental capacity. Nalty's Adm'r v. Franzman's Ex'r, 221 Ky. 709, 299 S. W. 585; Woodruff's Ex'r v. Woodruff, 233 Ky. 744, 26 S, W. (2d) 751; McCrocklin's Adm'r v. Lee, 247 Ky. 31, 56 S. W. (2d) 564; McPerkin v. Commonwealth, 236 Ky. 528, 33 S. W. (2d) 622. It was competent for contestees to prove testatrix had delusions that her husband was in her room, that she saw him and talked to him in the presence of visitors. Also, it was competent to prove that in the latter months of her life she embraced a religion which had been anathema to her for years, as such a change without any explanation or reason therefor may be some evidence of lack of mental capacity.

Coming to the question of whether the court should have given a peremptory instruction in favor of the will and whether the verdict is flagrantly against the evidence, we will not attempt to specially refer to the testimony of the various witnesses, since such testimony covers several hundred pages, but will be content with

a brief summary of the testimony given against the will and that given in support thereof. Three doctors testified as to the diseased condition of testatrix which has heretofore been described; that these diseases caused a toxic psychosis, which is similar to insanity, and caused her to be mentally confused; that while she might have had intermittant rational intervals, this toxic psychosis would last as long as her diseased condition existed. None of the doctors saw her the day the will was executed, July 2, 1937, and could not testify as to her mental condition on that particular day. Although Dr. Goodman testified she was in his office on July 2, 1937, it is apparent from his entire testimony that he intended to fix this date as July 2, 1936. These doctors had seen her previously and subsequently to July 2, 1937, and all three of them testified she was without testamentary capacity. Appellants rely on Dossenbach v. Reidhar's Ex'r, 245 Ky. 449, 53 S. W. (2d) 731, 737, as supporting their contention that a peremptory instruction should have been given the jury to find for the will. In the Dossenbach case it was written:

> "When an expert's opinion is rested upon the simple facts of life and everyday occurrences, it possesses no more weight or value than that of any other intelligent person."

In the instant case the opinion of the doctors was not rested on the simple facts of everyday life, but was founded on their knowledge of the science of medicine.

This medical testimony is supported by many lay witnesses who detailed facts and circumstances upon which they based their belief that Mrs. Davis did not have mind and memory sufficient to make a will on July 2, 1937. It is quite obvious the trial court properly refused to grant appellant's motion for a peremptory instruction.

Besides the testimony above set out, some of Mrs. Davis' friends, roomers and acquaintances testified as to her having her house and basement searched for gold and that she had the paper torn from the walls in places before she could be satisfied there was no gold hidden behind the wallpaper; of her washing her dog in the kitchen sink and putting it in her bed and sleeping with it without so much as drying it; of keeping the dog in her room and bed without letting it out until it soiled them; of tying her dog and cat together and then fasten-

ing the string to her ankle; of barricading herself in her room as protection against Mrs. Knott's husband; of hallucinations that certain persons were attempting to poison her and of her threats to shoot herself with a pistol she had repaired as a means of protection; of turning against her friends and accusing them of stealing from her, and the many other abnormal things she did and said which led these witnesses to believe she had not mind and memory sufficient to enable her to take a rational survey of her estate and to dispose of it among the natural objects of her bounty according to a fixed purpose of her own.

On the other hand, Judge Kavanaugh, a lawyer of excellent standing and ability, testified Mrs. Davis' mind and memory were as good as any person's on the day she executed this will. He is supported by the testimony of Charles Hesterman, an insurance man who attested this will. Judge Kavanaugh testified he had never seen Mrs. Davis when her mind and memory were not excellent and his wife, Mrs. Kavanaugh, a very admirable lady who was an attesting witness to the will Mrs. Davis executed in April, 1937, and who had known Mrs. Davis for a long number of years, testified she was a well-read, refined, cultured lady and that her mind was never affected. Mrs. Knott, the devisee, and also many friends, acquaintances and associates of Mrs. Davis testified she was a woman of strong, clear mind and that they never saw her do, or heard her say, the unusual things detailed in the preceding paragraph. They relate facts and circumstances upon which they based their opinions that she possessed testamentary capacity.

Thus we see there is a direct conflict in the evidence and the rule is of long standing that where the evidence is conflicting, the verdict of a properly instructed jury is conclusive. Cincinnati, N. O. & T. P. R. Co. v. Brandenburg, 149 Ky. 582, 149 S. W. 988; Town of Wingo v. Rhodes, 234 Ky. 385, 28 S. W. (2d) 465; Murphey's Ex'x v. Clinkinger, 244 Ky. 336, 50 S. W. (2d) 942. There was not only sufficient evidence to cause the court to submit this case to the jury, but ample evidence to sustain the verdict.

Appellants complain it was error for the court to refuse to permit the husband of the devisee, Mrs. Knott, to testify; and that it was error for the court to refuse

to permit certain witnesses to testify on the ground that their evidence was merely cumulative because a large number of witnesses had already testified on the subject for which such witnesses were offered. Admitting arguendo that all the witnesses whom the court refused to permit to testify were competent, yet in the absence of an avowal as to what these witnesses would have testified, the correctness of the court's ruling cannot be reviewed. Ray's Adm'r v. Standard Oil Company, 250 Ky. 111, 61 S. W. (2d) 1067; Globe Indemnity Company v. Daviess, 251 Ky. 442, 65 S. W. (2d) 456; Robertson v. Commonwealth, 269 Ky. 317, 107 S. W. (2d) 292.

Judgment affirmed.