## Gravitt v. Commonwealth.

(Decided May 27, 1919.)

### Appeal from Graves Circuit Court.

1. Rape—Indictment and Information—Detaining Woman Against Her Will.—It is not necessary to charge in an indictment for taking and detaining a woman, under section 1158, Ky. Stats., that it was done feloniously, as the statute does not require that the act should be feloniously done, but, the use of the word is only surplusage and does not impair the indictment. It is sufficient to charge, that the taking and detention was unlawfully done.

2. Rape—Criminal Law—Detaining Woman Against Her Will.— There can be but one crime embraced in an indictment for a violation of section 1158, Ky. Stats., and where upon a trial for such crime, evidence is introduced tending to prove more than one offense by the defendant upon the same woman, the court should require the Commonwealth's attorney to elect which offense he will rely upon for conviction, and should so instruct the jury, as to confine it to a decision of the guilt or innocence of the defendant of the offense upon which the state relies for conviction, and

should admonish the jury, that it could consider the proof as to the other offenses, only, as corroborative of the guilt of the offense, which is being tried.

3. Rape—Detaining Woman Against Her Will.—It is competent for a defendant in an indictment for a violation of section 1158, Ky. Stats., where his defense, is that the woman consented, to make proof of specific acts of lewd and lascivious behavior by the woman, with other men, shortly before the commission of the alleged crime for which he is being tried, as evidence to be considered by the jury upon whether the acts of the defendant were against the will of the woman or with her consent.

WEBB & WEAKS, B. C. SEAY and SAMUEL H. CROSSLAND for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, Ira Gravitt, was tried and convicted, and sentenced to imprisonment for four years, upon an indictment, charging him with a violation of section 1158 Ky. Stats. His motion for a new trial being overruled, he has appealed, and insists, that the trial court erred to the prejudice of his substantial rights, by:

(1) Overruling a demurrer to the indictment.

(2) Admitting incompetent evidence against him.

(3) Misinstructing the jury and failing to properly instruct the jury.

(4) Overruling his motion for a new trial.

These alleged errors will be considered in their order.

(a) The complaint made against the indictment is, that it charges that the accused did, "with force and arms, unlawfully, willfully and feloniously, take and detain Vera Franklin against her will with the intention to have carnal knowledge of her . . . himself," the said Vera Franklin being a female, and not the wife of the accused. It is contended, that the use of the word, "feloniously," in describing the intention of the accused, renders the indictment fatally defective. The crime, which the indictment accused the appellant of, is a statutory one, and is described by the statute, and usually, an indictment for a statutory offense, which follows the language of the statute, is sufficient, and such is the case, with reference to the crime denounced by

section 1158, *supra*, and as the statute which creates the crime does not require its felonious violation to make an offender guilty of the crime, it is sufficient to charge in an indictment, that the accused, unlawfully, committed the acts, which constitute guilt of the crime, and in this, it is different from a common law felony. Higgins v. Com., 94 Ky. 54; Kaelin v. Com., 84 Ky. 354; Cundiff v. Com., 86 Ky. 196. The use of the word, "feloniously" in the indictment in the instant case, however, did not, in any respect, impair it, or change its meaning, and was, at most mere surplusage.

(b) A consideration of the errors complained of in the admission of the evidence against the accused, will make necessary, a short statement of the facts, as presented by the evidence. The accused and Vera Franklin were cousins, and the homes of their parents were within about one-half mile of each other, and situated by the side of a road. Chance Handley, a half-brother of Vera Franklin, and his wife, Ina Handley, who was also, a cousin, as well as a cousin of the accused, resided in a house beside the same road, and between the Franklin and Gravitt houses, and in sight of each. Vera Franklin and the accused were frequently together, at their respective places of residence and elsewhere, and, according to her testimony, the accused was at the house of her father, on the 22nd day of May, 1918, and, in the afternoon, she left her home to go to the house of Cora Fields, a sister of the accused, to procure Mrs. Fields to make her a dress. The appellant accompanied her, and when they came to the house of Chance Handley, there was no one at home, and she entered the house for the purpose of leaving certain letters for her sister-in-law, thinking, that the accused would proceed on his way, but when she had gotten in the house, she heard a step upon the porch, and then the accused entered the house, and seizing her, threw her, forcibly, upon a bed, and attempted to have intercourse with her. She said to him, that some one was coming, when he sprang up and started to run and she did, also, but when they came to the door, and he saw that no one was approaching, he again seized her and threw her upon the floor, and was attempting to accomplish his purpose, when Chance Handley came near the house with a wagon, and the accused desisted and ran out of the house. Handley proceeded with the wagon to the house of the father of the

accused, and she went along behind the wagon, to the house, where Ina Handley was visiting at the time. Vera returned with Ina Handley to her home, and remained there over night. Chance Handley went away to be gone until a late hour of the night, and Ina called to the accused to come and stay with her and Vera until her husband returned, which he did. On the following day, about one o'clock p. m., Vera was again at the home of the accused, and accompanied his father and brother, in a wagon, to the home of Mrs. Fields, who resided upon a farm belonging to the elder Gravitt, to have her make a dress for her. While there, the accused came, in a buggy, and took Treva Fields, a young lady who was there, into the buggy, when Vera, although her dress had not yet been completed, got into the buggy with them, and they proceeded to the home of the Fields girl, which was a mile away, and then Vera and the accused, proceeded, in the buggy to his home, where they remained for a time. The Handleys were then at their home, but left very soon, and after they left their home, Vera started, apparently, to go to her home, but, according to her statement, when she arrived opposite the Handley home, the accused had followed her, and called to her and requested her to go into the Handley house and get a razor for him, and she agreed to do so, if he would remain out in the road, but, when she had been in the house for a few moments, he came to the back door and called to her to let him in, saying that he did not want her, but wanted the razor. She opened the back door, and he came in, and immediately seized her and throwing her upon a bed, attempted to have intercourse with her. She resisted all she could and, after a time, he desisted in his efforts, and went away, and she then proceeded to her home. She testified, that the assaults, by the accused, were against her will, while he testified, that upon each occasion, they went into the Handley house, by agreement, and for the purpose of engaging in sexual intercourse, and that his attempts to do so, were with her consent, and that the failure to accomplish their purpose was not because of any objection upon her part.

It will be observed, from the foregoing, that according to the evidence for the prosecution, the accused was guilty of two distinct offenses, for either of which he might be convicted under the indictment, and the evidence of his guilt of each, was permitted to be intro-

duced and his guilt, under the indictment, was submitted to the jury upon the evidences of both offenses, and it would be impossible to tell which crime, the jury found him guilty of, or some of the jurors might have believed him to be guilty of one of them, and their fellows may have believed him to be guilty of the other. An indictment for the crime of detaining a woman against her will, etc., can contain only one offense of that dignity, but, under our system of criminal pleading, an indictment for this offense may be so drawn, that an accused may be tried upon it, for any offense committed previous to the finding of the indictment upon the person named as the victim, in the indictment. Where an accused is put upon trial, under an indictment and the evidence tends to prove the accused to be guilty of more than one offense of the kind, which is charged in the indictment, the attorney for the Commonwealth, should be required by the court to elect upon which one of the offenses, he will rely for conviction, and the jury should be confined by the instructions to his conviction or acquittal of the particular offense, which the state has elected to rely upon for his conviction. A defendant can not be required to undergo a trial for two crimes of the character denounced, in the indictment, at the same time and under the same indictment, as the indictment does not contain, but one offense. The attorney for the Commonwealth in the instant case, was entitled to introduce evidence as to each of the offenses, but, after having elected the one he would rely upon for conviction, the evidence of the other could only be considered as corroborating the proof of the defendant's guilt of the one for which he was being tried, and the court should have so admonished the jury, when the evidence was heard. Smith v. Com., 109 Ky. 685; Newson v. Com., 145 Ky. 627; McCreary v. Com., 163 Ky. 206. The Commonwealth's attorney introduced, first, the evidence of appellant's guilt of the offense alleged to have been committed by him on the 23rd day of May, and in the absence of a formal election, it would be considered, that he had elected to rely for conviction upon the offense committed upon that day, but, when the evidence, touching the offense committed upon the 22nd day of May, was offered, the appellant made no objection to its introduction unaccompanied by an admonition, nor requested the court to admonish or instruct the jury, as to the purpose for which it should consider it, and is now

precluded from complaining that the court did not instruct the jury, in regard to it. Day v. Com., 173 Ky. 269; Renaker v. Com., 172 Ky. 714; Bennett v. Com., 175 Ky. 540.

Ina Handley was permitted to testify, without objection, that on the days following the days upon which appellant is accused of committing each of the offenses, for which he was tried, that Vera Franklin informed her of the assaults, which appellant had made upon her. This evidence was merely hearsay, and not competent. The rule which permits to be proved the complaint directly made by the victim of a rape, but without the details of the occurrence, has not been extended so as to permit proof to be made, that a victim of an unlawful detention has made complaint of it. Douglas v. Com., 24 R. 562. At the close of the evidence of Ina Handley, the appellant moved the court to exclude her entire evidence, which the court properly overruled, as the greater portion of her evidence was competent, and the appellant did not point out or designate the evidence, above mentioned, as incompetent. Ellis v. Com., 146 Ky. 715.

(c) The appellant's motion to instruct the jury to peremptorily find him not guilty, was properly overruled. The witness, Vera Franklin, testified to an abundance of facts clearly demonstrating the guilt of the accused, if her statements were true and while she was contradicted by the appellant and others, and certain circumstances tended to weaken the strength of her testimony, her credibility was a question for the jury and not the court. Graham v. Com., 174 Ky. 645; Ockerman v. Com., 176 Ky. 753; Bingham v. Com., 183 Ky. 688.

(d) The instructions given the jury, required it to believe, that the alleged acts of the appellant in detaining the woman, were done "feloniously," and then another instruction was given, defining the term "feloniously." This, in our opinion, was not prejudicial to the substantial rights of the appellant, and a reversal would not be granted upon that account, as the meaning given to the word "feloniously" described substantially the intent with which the appellant must have been actuated to be guilty of the crime charged, but, upon another trial, it will be better to instruct in the language of the statute, within the averments of the indictment, which are necessary to constitute the crime, and the definition of "felonious" may then be eliminated, as well as that term. It

was the duty of the court, however, to instruct, as to the entire law of the case, and when evidence was introduced, tending to show the commission of two offenses, applicable to the indictment, the jury should have been confined by the instructions to finding him guilty or not guilty of one of the offenses, instead of submitting it for decision as to both offenses.

(c)  With his motion and in support of one of the grounds for a new trial, the appellant filed his own affidavit, and those of Belle Stephens, Bud Hill, Chancy Gravitt, Oval Lancaster, Treva Davis, Ross Gravitt, Lila Hill and Essie Brown.  These affidavits purported to contain newly discovered evidence of which the appellant did not know at the time of the trial, and could not, with reasonable diligence, have discovered and offered at the trial. The appellant so deposes, and the newly discovered witnesses likewise depose.  Much of what is proposed to be proven by these witnesses would not justify the granting of a new trial.  Certain of these witnesses propose to testify to facts, which, they say, transpired in the presence of appellant, and he was obliged all the time to have known of the statements, they would make.  Certain others propose to testify as to declarations of the witness, Ina Handley, and in contradiction of the testimony given by her upon the trial, and to opinions which they say, she had expressed touching the transaction out of which the charge in the indictment grew.  Of course, her opinion as to the facts in the case would not be competent for any purpose.  A new trial should not be granted to give a litigant an opportunity to use, upon the new trial, witnesses of whose existence he knew, as well as the facts, they would prove, and whom, he had negligently failed to offer upon the trial.  Nor, as a rule, will a new trial be granted to allow a litigant to impeach witnesses, who have testified upon the trial, either by proofs touching their characters for truth, or by contradictions, nor should a new trial be granted on account of newly discovered evidence, unless the proposed new evidence is important and reasonably calculated to have a decisive influence upon another trial. Gee v. Com., 178 Ky. 666; Crouch v. Com., 172 Ky. 471; Price v. Thompson, 84 Ky. 219; Chambers v. Chambers, 2 A. K. M. 348; Ellis v. Com., *supra;* Riperdam v. Scott, 1 A. K. M. 151; Hays v. Com., 140 Ky. 184.  Nor, as a rule, will a new trial be granted on account of new evi-

dence, which is merely cumulative. There is, however, in the newly discovered evidence, in this case, certain alleged facts, which are competent evidence for the accused, and which can not be strictly classed as being cumulative, and which appear reasonably calculated to have an influence upon a verdict. The accused may be convicted upon the testimony of the prosecutrix, alone. The essential element of guilt of a crime of the character charged, is, that the taking and detention is against the will of the woman. If not against her will, the crime is not committed. The issue upon the trial of this case, was whether or not, the prosecutrix consented to the acts of the appellant. She testified, that the acts of appellant were against her will, and that she did not consent. The appellant testified, that she did consent, and that his conduct, was not against her will. There was no other person present, and there is no circumstance proven, in the nature of appearances at the place of commission, which can shed light upon the nature of the transaction.

Several of the new witnesses propose to testify to acts of a lascivious character, on the part of the prosecutrix, with men, other than the appellant, shortly before the alleged crimes were committed by appellant. In prosecutions for rape, it is competent for the defendant to prove specific acts of a lewd and lascivious character by the prosecutrix with third parties, occurring shortly before the alleged rape, as evidence for the consideration of the jury in determining whether the prosecutrix consented to the intercourse with the defendant. Brown v. Com., 102 Ky. 227; Stewart v. Com., 141 Ky. 522. The consent or want of consent on the part of the woman plays as important a part in a prosecution for unlawfully detaining a woman, as in a prosecution for rape. In fact, the former offense is a degree of the latter. Fagan v. Com., 25 K. L. R. 1029. The acts of a lewd and lascivious character on the part of Vera Franklin, with other men proposed to be proved by the newly discovered evidence, shortly before the commission of the alleged crime by appellant, will be competent evidence upon another trial.

These acts, too remote or too insignificant to have a tendency to lead the guarded discretion of a reasonable man to believe that she consented to the acts of appellant should be rejected by the trial judge, in the exercise of his discretion. The failure to grant a new trial, we think

was error, under all the circumstances of the trial. The judgment is therefore reversed and cause remanded for a new trial, and for proceedings not inconsistent with this opinion.